IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD E. SMITH, | ) |
|           Plaintiff, | ) |
| v. | )     2:08-cv-365 |
| | ) |
| JONES, GREGG, CREEHAN & GERACE, LLP., RICHARD B. SANDOW, Esq., DAVID M. HUNTLEY, Esq., BYRON W. KING, Esq., JOHN P. CORCORAN, JR., Esq., RAYMOND M. ROBERTS, Esq., MICHAEL A. CARR, Esq., ANTHONY W. SAVEIKIS, Esq., STOCKEY & KELLY, WILLIAM E. STOCKEY, Esq., THE DOLAN GROUP, LLC., JOHN S. DOLAN, CPA, DAGNON & DENNEHY, JOHN M. DAGNON, CPA, PNC FINANCIAL SERVICES GROUP, JOEL GOLD, Esq., LAZARUS M. PALNICK, Esq., CHARLES DATZ, CLYDE H. SLEASE, Esq., THOMAS E. CUNNINGHAM, BERNADETTE J. CUNNINGHAM, CHRISTIN S. MILLER, DAVID K. MILLER, RICHARD J. BARKO, and STACIE L. BARKO, | ) |
|           Defendants. | ) |

## MEMORANDUM ORDER

Now pending before the Court are numerous Motions to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or Motions for a More Definite Statement pursuant to Fed. R. Civ. P. 12(e) filed by all Defendants (Document Nos. 83, 88, 90, 92, 96, 98, 100, 102, 103, 104, 130, 132, 133).[1] Also pending are PLAINTIFF'S MOTION FOR STAY PENDING PARALLEL PROCEEDINGS BY THE FEDERAL BUREAU OF INVESTIGATION (Document No. 85), Plaintiff's MOTION TO STRIKE AND REMOVE

---

[1] The legal arguments raised in these motions are similar and the motions will be addressed collectively. The Court need not reach or determine the unique issue raised by Thomas and Bernadette Cunningham as to the effect of the discharge of their Chapter 7 bankruptcy case (Document No. 132) or Plaintiff's responses thereto.

ATTORNEY ROBERT O. LAMPL FOR CONFLICT OF INTEREST (Document No. 136) and

Plaintiff's MOTION FOR A HEARING AT DOCKET NO. 85 (Document No. 138). Plaintiff

has filed responses to the Defendants' motions (Document Nos. 105, 134, 135, 137, 139, 140,

142) and they are ripe for disposition.

Procedural History

Plaintiff Donald E. Smith is pro se. In a Memorandum Order dated March 27, 2008, as

part of its evaluation (and ultimate denial) of Plaintiff's request to appoint counsel, the Court

performed a preliminary analysis of the only two claims in the original complaint that may have

supported the exercise of original subject-matter jurisdiction in this Court. In relevant part, the

Court stated:

> The Court harbors significant doubts as to Plaintiff's ability to overcome
> the threshold hurdle [*i.e., whether the claimant's case has some arguable merit in
> fact and law*]. The Complaint is extraordinarily lengthy and its chronological
> allegations are exhaustive. However, the gravamen of the complaint concerns
> control over a closely-held corporation, which Defendants allegedly drove into
> bankruptcy. . . . As explained by the Supreme Court in *Bell Atlantic Corp. v.
> Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007), Plaintiff must state a
> "plausible" claim for relief.
> There are four basic elements that a plaintiff must establish to prove any
> civil RICO action: (1) the existence of a RICO enterprise; (2) the existence of a
> pattern of racketeering activity; (3) a nexus between the defendant, the pattern of
> racketeering activity or the RICO enterprise; and (4) resulting injury to the
> plaintiff's business or property. *Rosenberg v. JCA Assoc.*, 2007 WL 1038893
> (D.N.J. 2007). Because Plaintiff is alleging predicate acts based on fraud, the
> RICO claim must be stated with particularity. Fed. R. Civ. P. 9.
> The instant Complaint is flawed in numerous respects. It does not identify
> the RICO "enterprise." Although unclear, Plaintiff does not appear to be alleging
> that Total Industrial and Packaging Corporation ("TIP"), of which he is or was a
> 49% owner, is the "enterprise," but rather, that TIP is the victim of the alleged
> RICO scheme. Similarly, although ¶¶ 243, 246-249 attempt to generally identify
> eight predicate acts under RICO, the complaint does not set forth with

> particularity the conduct by any specific defendant which would satisfy all the elements of a specific predicate offense. Such conduct as preparing loan applications, taking an entity into bankruptcy, not signing a Forbearance Agreement or threatening to initiate litigation, without more, is not inherently unlawful. . . . Most troubling, the Complaint names approximately 25 defendants, yet the operative RICO allegations do not specify which defendant or defendants engaged in any particular activity. Thus, the "nexus" element is completely lacking as to each named Defendant.
>
> At this stage of the case, the Court need only preliminarily assess the relative merits of the claim and Defendants have not yet had an opportunity to be heard. Accordingly, the Court will not dismiss the RICO claim, but will merely conclude that at this stage, appointment of counsel is not justified.

Plaintiff subsequently sought to amend the complaint and informed the Court that counsel would be entering an appearance on his behalf. In a Memorandum Order dated June 9, 2008, the Court granted Plaintiff's motion to amend, but cautioned that "participation by Plaintiff's counsel would be of substantial benefit in this factually and legally complex case" and opined that ideally counsel would draft the amended complaint. The Court extended the deadline for filing an amended complaint if an attorney entered an appearance, explaining that "additional time is intended to provide counsel with an opportunity to become familiar with the facts of the case." On July 1, 2008, the Court granted Plaintiff's motion for a further extension of time to obtain counsel. To date, no attorney has filed an appearance on behalf of Plaintiff.

On August 13, 2008, Smith filed his pro se Amended Complaint, which sets forth nineteen counts in 288 numbered paragraphs and 143 pages. In addition, Smith attached 148 exhibits to the Amended Complaint. There is no diversity of citizenship between the parties, as Plaintiff and most of the Defendants are citizens of Pennsylvania. Only Count I, which asserts a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, would be within the Court's original subject-matter jurisdiction. Plaintiff asks the

3

Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining eighteen counts of the complaint, which are all based on state law.

Standard of Review

The proper standard for evaluating motions to dismiss has been the subject of two recent precedential decisions. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), all nine justices of the United States Supreme Court agreed that the oft-quoted standard that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" has been retired and "is best forgotten." *Id.* at 1968.[2] The Court explained that a complaint must allege enough "facts" to show that a claim is "plausible" and not merely conceivable. *Id.* at 1965. The term "plausible" is not suspectible of mathematical quantification, but lies somewhere on the rhetorical spectrum between `"conceivable" or "speculative" and "probable." Indeed, the *Twombly* Court made a distinction between facts that were merely "consistent" with a wrongful conspiracy and facts that would be "suggestive" enough to render the alleged conduct plausible. *Id.* at 1966. In particular, the Court upheld dismissal of a complaint which alleged an antitrust conspiracy, despite "stray averments" that defendants had entered into an unlawful agreement, explaining that the plaintiff had alleged "merely legal conclusions." *Id.* at 1970. The Supreme Court also emphasized the need for district courts to prevent unjustified litigation expenses resulting from claims that are "just shy of a plausible entitlement." *Id.* at 1967, 1975.

---

[2]The standard set forth in Plaintiff's Response to Defendants' Motion to Dismiss ¶ 1 is patently incorrect. Plaintiff should have noted the *Twombly* "plausibility" standard because the Court cited *Twombly* in its Memorandum Order of March 27, 2008.

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit further refined the *Twombly* standard. As the Court of Appeals explained, "notice pleading" pursuant to Rule 8(a)(2) remains intact, but requires the pleader to make a "showing" of entitlement to relief, and to give the defendant fair notice of what the claim is and the grounds upon which it rests. A pleader may not simply make a "bare averment that he wants relief and is entitled to it." *Id.* at 233. Labels, conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Id.* at 231. Rather, the now-applicable pleading standard is as follows: stating a claim requires a complaint with enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal evidence of all the necessary elements of Plaintiff's claims. *Id.* at 234.

Legal Analysis

The Court will first evaluate the motions to dismiss the RICO claim in Count I, as it is the sole basis of original subject-matter jurisdiction. The pending motions to dismiss filed by the various Defendants will be addressed collectively. The Amended Complaint does not make individualized specific allegations against the various Defendants. Rather, the substantive allegations against each Defendant, set forth in paragraphs 180-204 of the Amended Complaint, consist of identical boilerplate that appears to have been simply "cut and pasted." Moreover, the RICO count is asserted against "All Defendants" and avers that "the association of the 25 defendants participated, either directly or indirectly, and controlled, either directly or indirectly, in the conduct or affairs of the RICO enterprise and TIP." Amended Complaint ¶ 164. Defendants each raise similar arguments as to the perceived insufficiencies of the Amended

5

Complaint. As explained below, the Amended Complaint suffers from numerous shortcomings that apply universally to all Defendants.

As this Court previously explained in its Memorandum Order of March 27, 2008, there are four basic elements that a plaintiff must establish to prove any civil RICO action: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff's business or property. *Rosenberg v. JCA Assoc.*, 2007 WL 1038893 (D.N.J. 2007). There may be additional elements depending on the particular subsection. In this case, Plaintiff Smith appears to be asserting RICO claims under § 1962(c) and (d). The elements of a § 1962(c) claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). In order to adequately plead a RICO conspiracy under § 1962(d), "the plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additionally, the elements must include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Grand Central Sanitation, Inc. v. First National Bank of Palmerton*, 816 F. Supp. 299, 308 (M.D. Pa. 1992) (dismissing RICO claim based on termination of minority shareholder's interests). In *Beck v. Prupis*, 529 U.S. 494 (2000), the Supreme Court concluded that termination of a company president, allegedly in furtherance of a conspiracy, was not an act of racketeering and thus did not give rise to a RICO claim, and explained:

> a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy

> plaintiff allege injury from an act that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts § 876, Comment b, meaning an act that is independently wrongful under RICO.

*Id.* at 505-06. *See also Anderson v. Ayling*, 396 F.3d 265 (3d Cir. 2005) (affirming dismissal of RICO claim arising from termination of employment of union members).

Because Plaintiff is alleging predicate acts based on fraud, the RICO claim must be pled with particularity as to the circumstances constituting fraud. Fed. R. Civ. P. 9. Plaintiff Smith recognizes that this is the applicable standard. Amended Complaint ¶ 164. The Court will now turn to the specific elements of a RICO claim.

### 1. RICO Enterprise

A RICO "enterprise" is broadly defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, in order to establish the existence of a RICO enterprise, Plaintiff must demonstrate that the enterprise is (1) an ongoing organization with some sort of structure for making and carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and (3) that the enterprise is separate and apart from the pattern of activity in which it engages. *Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 539 (E.D. Pa. 1991) (citations omitted). The RICO enterprise and the RICO defendants must be distinct and separate. *Id.* The defendants must participate in the conduct of the affairs of the *enterprise*, as opposed to their *own* affairs. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)(citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

The gravamen of the Amended Complaint revolves around a bitter struggle for control over a closely-held corporation, Total Industrial & Packaging Corporation ("TIP"), of which Smith was a 49% shareholder and Secretary/Treasurer/Bidder. Bernadette Cunningham became the 51% shareholder and President in August 2000. Amended Complaint ¶ 31. It is clear that TIP is not alleged to be the RICO enterprise. Rather, Plaintiff avers that TIP is "the victim of the RICO scheme." Amended Complaint ¶164. The Defendants are primarily law firms, accounting firms and individual lawyers and accountants who were engaged to provide professional services to TIP, Cunningham and/or to Smith himself.[3] As it appears to the Court, Plaintiff asserts that all twenty-five Defendants conspired to intentionally remove Smith from employment, lock him out of the corporation and bankrupt TIP so that they could form a "new parallel entity." Amended Complaint ¶167. Plaintiff's theory is that Defendants sought to usurp the lucrative contracts that TIP had secured with the United States Departments of Defense and Agriculture to supply sandbags and polypropylene bags. Plaintiff concedes that the alleged "scheme unraveled and did not materialize" and "the creation of the new parallel entity never transpired." Amended Complaint ¶168. Plaintiff, perhaps in the alternative, also describes the RICO enterprise as being comprised of six groups which called themselves the "Working Group." Amended Complaint ¶169 (citing to Exhibit 20, page 40). Exhibit 20 is a 96-page compilation of billing statements for legal services rendered by the law firm Jones, Gregg, Creehan & Gerace, LLP, which reflects a passing reference to the "working group" in a single line-item on May 9, 2006. There are no facts alleged as to the structure of the working group, its

---

[3]The other named Defendants are the 51% shareholder of TIP, Bernadette Cunningham, her husband Thomas, her daughter and son-in-law (the Millers), and the general manager of TIP along with his wife (the Barkos).

decision-making and management processes, or the roles and duties of each alleged participant. The Amended Complaint concedes that the "working group" "did carry out legitimate objectives in addition to criminal actions and conducting lawful activity unrelated to the pattern of racketeering activity." *Id.*[4]

The Amended Complaint falls far short of alleging a plausible RICO enterprise. It is inherently implausible that numerous lawyers and accountants would all join an unlawful conspiracy to enter the sandbag business. The Amended Complaint provides no factual details to support an inference that any of the Defendants conducted affairs of a RICO "enterprise" as opposed to their own affairs of providing professional legal and accounting services. Instead, it contains sweeping generalities, boilerplate repetition of legal principles, and a comparison to a passage in a book written in 1999. Amended Complaint ¶168. In summary, the Amended Complaint does not adequately allege a RICO enterprise.

2.  Pattern of Racketeering Activity

A "pattern" is defined as at least two acts of racketeering activity within a ten year period. 18 U.S.C. §§ 1961(5), 1962(c). The statute sets forth a list of applicable predicate acts. 18 U.S.C. §§ 1961(1). A plaintiff must aver that the predicate acts are related and that they amount to a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989) (pattern requires continuity plus relationship). "A short term scheme threatening no future criminal activity will not suffice." *Kehr Packages, Inc. v. Fidelcor, Inc.*,

---

[4] As will be discussed supra, the Amended Complaint recites a litany of activities based on a law firm billing statement, none of which is facially improper.

926 F.2d 1406, 1412 (3d Cir.1991).

On its face, the Amended Complaint does not plead a threat of future criminal activity because it acknowledges that the "scheme unraveled" and the alleged parallel entity never came into existence. Moreover, Plaintiff has fallen far short of his obligation to plead a pattern of racketeering with the required particularity. Paragraphs 180-204 of the Amended Complaint recite the same boilerplate list of racketeering activities as to each Defendant verbatim. The list includes, as to 18 U.S.C. § 1962(c) (statutory citations omitted): mail fraud, financial institution fraud, racketeering, any offense involving fraud connected with a case under title 11 (bankruptcy) which includes bankruptcy fraud, bankruptcy fraud - any act of fraud occurs after Oct. 22, 1994, false statement, false statement - statement under oath or penalty of perjury, victimization of creditors and tax fraud; and as to 18 U.S.C. § 1962(d) (statutory citations omitted): conspiring to violate any of the provisions of § 1962 and/or aiding and abetting and/or conspiring to commit intentional bankruptcy fraud, conspiracy in the filing of intentional bankruptcy fraud, conspiracy to make false statements in a bankruptcy, conspiracy to make false statements under oath in a bankruptcy, conspiracy of victimization of creditors in a bankruptcy and/or conspiracy to commit tax fraud in a bankruptcy.[5]

The Amended Complaint fails to particularize the role and conduct of each Defendant, but recites the same litany of alleged racketeering activity as to each Defendant. It is particularly

---

[5] The Court has exhaustively reviewed all of the exhibits attached to the Amended Complaint. These exhibits also fail to establish that the Defendants were engaged in illegitimate activity. Rather, the exhibits reflect lawyers performing legal work and accountants performing accounting work. Although the emails attached as exhibits to the Amended Complaint illuminate Smith's palpable frustration with the disputes regarding control over TIP, there is simply no plausible basis to infer that he was the victim of a far-flung RICO conspiracy.

noteworthy that this is Plaintiff's second effort to plead a cognizable RICO claim, and that Plaintiff is aware of his obligation to plead the allegations of fraud with particularity. Amended Complaint ¶ 164. Indeed, in its Memorandum Order of March 27, 2008, the Court specifically identified this shortcoming – "although ¶¶ 243, 246-249 attempt to generally identify eight predicate acts under RICO, the complaint does not set forth with particularity the conduct by any specific defendant which would satisfy all the elements of a specific predicate offense" – and admonished Plaintiff that such allegations would not suffice. Despite the extreme length of the Amended Complaint, it is simply lacking in the "who, what, when, where and how" details of each Defendant's allegedly improper activities and how they fit into the alleged scheme. *See Annulli v. Panikkar*, 200 F.3d 189, 201 n. 10 (3d Cir. 1999) (abrogated on other grounds *Rotella v. Wood*, 528 U.S. 549 (2000)). Although Plaintiff has conjectures, hunches and speculation regarding alleged racketeering, he has made no effort to distinguish the actions of the various Defendants and has pled no actual facts that would make any of the alleged predicate acts plausible. *Compare Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp.2d 295, 315-16 (D.N.J. 2005) (dismissing complaint that alleged elements of predicate offenses but failed to set forth facts of underlying conduct). As the Supreme Court explained in *Twombly*, it is not enough to allege facts that are "consistent" with a wrongful conspiracy. Rather, a complaint must allege facts that would be "suggestive" enough to render the alleged conspiracy plausible. 127 S. Ct. at 1966.

    3.    Nexus

Plaintiff must plead a specific nexus between the alleged predicate acts and the control of the alleged RICO enterprise. The Court's Memorandum Order dated March 27, 2008 identified

this element as the "most troubling" failure of the original Complaint. The following discussion in *In re Insurance Brokerage Antitrust Litigation*, 2007 WL 2892700 (D.N.J. 2007), is instructive and persuasive:

> Consequently, the Court of Appeals has applied *Reves* to limit RICO liability to those instances where there is ' "a nexus between the [defendant] and the conduct in the affairs of an enterprise," ' *Parise*, 159 F.3d at 796 (quoting *Peat, Marwick*, 996 F.2d at 1539), and plaintiffs' allegation would be deemed insufficient
>
> [i]f the plaintiffs ... nowhere averred that [the defendant] had any part in operating or managing the affairs of [its alleged enterprise associate, but merely] ma[d]e much ado about how important and indispensable [defendant's] services were to [to this alleged enterprise, since] the same can be said of many who are connected with [the alleged enterprise but are not part of it. Therefore it] cannot be said that, by merely performing what are generic ... services to [the alleged enterprise, the defendant] has opened itself to liability under the federal racketeering statute.
>
> *Peat, Marwick*, 996 F.2d at 1539-40.
>
> Given the many offenses that are classified as "racketeering violations," see 18 U.S.C. § 1961, the aforesaid limitation has been rigorously enforced to prevent an explosion of RICO civil strike suits targeting business disputes in which the plaintiff simply pleads the existence of a business relationship between the alleged wrongdoer-defendant and some third party. *See Peat, Marwick*, 996 F.2d at 1539 ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"); *see also Brittingham v. Mobile Corp.*, 943 F.2d 297, 301 (3d Cir.1991) (the enterprise "must be more than an association of individuals or entities conducting the[ir] normal affairs"), *overruled on other grounds, Jaguar Cars*, 46 F.3d at 258; *Howard*, 2005 U.S. Dist. LEXIS 17887, at *37 ("The critical distinction is whether the corporation is conducting the distinct affairs of another corporation or some separate new enterprise, or whether the corporation is simply using another organization to assist the corporation in its own affairs, legal or otherwise"); *accord Bennett v. Berg*, 710 F.2d 1361 (8th Cir.) (defendant's participation must be in conduct of affairs of RICO enterprise, which ordinarily will require some participation in operation or management of enterprise itself), *cert. denied*, 464 U.S. 1008 (1983); *Jubelirer v. Mastercard Int'l*, 68 F.Supp.2d 1049 (W.D.Wis.1999) (merely having business relationship with and performing services for an enterprise, including financial, accounting, and legal services, does not support RICO liability because performance of such services is not equivalent of participation in operation and management of enterprise, and this is true even

though the service provider knows of the enterprise's illicit nature or performs improper acts itself); *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 830 F.Supp. 257 (E.D.Pa.1993) (motion to dismiss is granted where allegedly misleading and fraudulent real estate appraisals were provided to savings and loan association, since, even if proven, such influence does not rise to level of participation in management or operation of enterprise required to attach RICO liability to those merely associated with enterprise and not participating in it).

The Amended Complaint fails to allege an appropriate nexus. To be sure, Plaintiff points to numerous meetings, discussions and conversations, *see, e.g.*, Amended Complaint ¶ 170, but averments that various Defendants discussed the bankruptcy options, engaged in financial planning and analysis, drafted bankruptcy filings and engaged in other similar activities falls far short of showing that those Defendants participated in the operation and management of a RICO enterprise. The Amended Complaint simply fails to allege facts sufficient to support a plausible inference that the Defendants exceeded the boundaries of the provision of professional services while having agreed to engage in a RICO enterprise. Far from addressing the shortcoming identified by the Court with regard to the original Complaint, allegations regarding the nexus of any individual Defendant are still completely lacking in the Amended Complaint.

4. Conspiracy

A Defendant may be held liable under § 1962(d) for conspiracy without being liable under § 1962(c). However, in the event all substantive RICO claims in the action are dismissed, a plaintiff cannot bring a § 1962(d) claim for an injury flowing from a non-racketeering act. *See Beck v. Prupis*, 529 at 505. "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.... [A]n

13

inference of conspiracy from the Complaint is no substitute for the requirement that the circumstances of the conspiracy be pleaded with specificity." *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989) (citations omitted). Plaintiff must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts. *Eaby v. Richmond*, 561 F. Supp. 131, 137 (M.D. Pa. 1983) (citations omitted). Bare allegations of conspiracies described in general terms may be dismissed. *Id.*

As the foregoing discussion demonstrates, the Amended Complaint fails to allege an actionable conspiracy. All of the underlying claims under § 1962(c) will be dismissed. There are no specifics regarding the participation and agreement to join the alleged conspiracy as to any alleged conspirator. Rather, the Amended Complaint merely contains sweeping generalizations as to an alleged conspiracy involving all Defendants. *See, e.g.* Amended Complaint ¶ 204 (conclusorily averring: "The 25 defendant conspirators agreed to engage in a pattern of racketeering activity" and "Each of the 25 defendants shared common purpose and to some extent carried it out.") Plaintiff has not pled specific facts as to any Defendant's agreement to conspire. Even assuming, arguendo, that the allegations in the Amended Complaint are consistent with a conspiracy, they fall far short of being suggestive of an unlawful RICO conspiracy. *Twombly*, 127 S. Ct. at 1966. In *Twombly*, the Supreme Court instructed lower courts to be cognizant of and prevent the litigation expenses that would result from such implausible claims.

In summary, the Amended Complaint has failed to allege a valid RICO claim in numerous respects. Accordingly, the motions of Defendants to dismiss Count I of the Amended

Complaint will be granted and Count I will be dismissed as to all Defendants.

Leave to Further Amend Complaint

Although Plaintiff has not sought the relief of a further amendment, the Court will sua sponte address the issue. As the procedural history makes clear, in this case the Court performed a preliminary analysis of the RICO claim, identified the numerous shortcomings in the original complaint, and explained in some detail the standard by which an amended pleading would be evaluated. Plaintiff was then given a full opportunity (and an extension of time) in which to overcome the flaws in the initial filing as identified by the Court. For the reasons set forth above, the Amended Complaint falls short of alleging a valid RICO cause of action in numerous respects. The Court concludes that permitting further amendment would be futile and inequitable to Defendants. Accordingly, leave to amend the complaint a second time is **DENIED**.

Exercise of Supplemental Jurisdiction

Plaintiff has asserted eighteen causes of action based on Pennsylvania law in addition to the sole federal claim. Some of the Defendants have urged the Court to exercise supplemental jurisdiction over these claims, and to dismiss them with prejudice. The Court will decline Defendants' invitation. This matter is still in its initial stage. No Defendant has filed an answer and no discovery has been conducted.

Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if: (1) the state law claims raise novel or complex issues, (2) the state law claims substantially predominate over the federal claim, (3) it has dismissed all federal claims, or (4) if

there are other compelling reasons for declining jurisdiction. The requirements of subsections (1)-(3) are satisfied, in that the issues involved are complex and the state law claims substantially predominate over the single federal claim, which is being dismissed. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims and those matters may be pursued in an appropriate state forum.

Plaintiff's Motion for Stay

Plaintiff requests that the Court stay the case pending an alleged investigation by the Federal Bureau of Investigation. In light of the Court's conclusion that the motions to dismiss the federal claim are meritorious and its decision to decline supplemental jurisdiction over the remaining state law claims, no legitimate purpose would be served by forestalling the resolution and finalization of this case in this forum. Accordingly, PLAINTIFF'S MOTION FOR STAY PENDING PARALLEL PROCEEDINGS BY THE FEDERAL BUREAU OF INVESTIGATION (Document No. 85) is **DENIED**.

Plaintiff's Motion to Remove Attorney Robert O. Lampl

Plaintiff contends that it would be a conflict of interest for Robert O. Lampl to represent the Cunninghams in this litigation because he also represents them in certain bankruptcy matters and moves that he be stricken as counsel. It is not improper for a lawyer to represent a client in multiple proceedings – indeed, it is a common occurrence and the lawyer's broader knowledge of the client's affairs generally benefits the client and the court. Plaintiff has failed to articulate a disqualifying conflict of interest. Accordingly, Plaintiff's MOTION TO STRIKE AND

REMOVE ATTORNEY ROBERT O. LAMPL FOR CONFLICT OF INTEREST (Document No. 136) is **DENIED**.

In accordance with the foregoing, it is ORDERED, ADJUDGED and DECREED that all pending Motions to Dismiss the Amended Complaint filed by the Defendants (Document Nos. 83, 88, 90, 92, 96, 98, 100, 102, 103, 104, 130, 132, 133) are **GRANTED IN PART as to Count I (RICO),** and **DENIED IN PART WITHOUT PREJUDICE** to the extent that they ask the Court to exercise supplemental jurisdiction and dismiss the state law claims. Plaintiff's MOTION FOR A HEARING AT DOCKET NO. 85 (Document No. 138) is **DENIED AS MOOT**. The clerk shall docket this case closed.

SO ORDERED this 5th day of December, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: DONALD E. SMITH
1308 Main Street #4
Burgettstown, PA 15021
(412) 722-3783
(by US Mail)

All Counsel of Record
(by CM/ECF)